ERNEST STOCK, Appellant, v. ELIZABETH SCHLOMAN ET AL.—18 S. W. (2d) 428.

Division Two, June 4, 1929.

1210

*E. M. Zevely* and *J. P. Peters* for appellant.

*Virginia Booth* and *James Booth* for respondents.

COOLEY, C.—This action was begun January 7, 1926, in the Circuit Court of Osage County against Elizabeth Schloman and her

guardian and curator, Ferdinand Zeitz, said Elizabeth Schloman having been theretofore adjudged incompetent to manage her affairs. The judgment below was in favor of defendants and plaintiff appealed to this court. Thereafter said Elizabeth died and her death being suggested the cause was revived here in the name of her administrator, who entered appearance.

Both parties seem to regard the action as one to determine title to real estate, under Section 1970, Revised Statutes 1919. Plaintiff's petition alleges the adjudication of incompetency of Elizabeth Schloman and the appointment and qualification of Zeitz as guardian and curator; that plaintiff is the owner in fee and in possession of certain described lands in Osage County, and then proceeds:

"That defendant, Elizabeth Schloman, and defendant Ferdinand Zeitz, as the guardian and curator of defendant Elizabeth Schloman, claim to have some title, estate or interest of, in and to the above-described real estate, the nature and extent of which is unknown to plaintiffs.

"Wherefore the premises considered, plaintiff prays the court to ascertain and determine the estate, title and interest of the parties, plaintiff and defendants, respectively, of, in and to such real estate, and to define and adjudge and determine by its judgment and decree, the title, estate and interest, severally, of the parties, plaintiff and defendants, of, in and to said real estate, and for all other proper relief."

Defendants' answer admits that plaintiff is the owner in fee of the lands, but alleges that his title is encumbered by and subject to a mortgage dated March 16, 1891, given by plaintiff's immediate grantors, Kamin and wife, the then owners, to Elizabeth Schloman, to secure their note of same date for $1800, due one day after its date, with six per cent interest per annum; that plaintiff purchased subject to the mortgage and assumed payment of the debt and has paid the interest thereon continuously up to and including that due on March 16, 1922, and that he still owes the principal sum of $1800 with interest thereon from March 16, 1922. The answer then states:

"Defendants further state that although the said mortgage has apparently become barred by the provision of the act of the General Assembly of Missouri, approved March 31, 1921, through lapse of more than twenty years from the date at which the note secured by the said mortgage became due, as appearing on the face of said mortgage, and by reason of failure of defendants as holders of said mortgage to file an affidavit, duly verified, showing the amount due on the said mortgage, within two years from the date of the said act of the General Assembly, yet defendants state and allege that the plaintiff thereafter, to-wit, on April 4, 1925, in writing, executed by him, acknowledged the existence of the said mortgage debt, and in

writing, subscribed by him, under said date, promised to pay the said mortgage absolutely; whereby defendants allege the said mortgage debt became revived and is still in full force and effect.''

The answer joins in the prayer of the petition for ascertainment of the ''title, estate and interest'' of the parties in the land and asks that the mortgage be adjudged to be still a valid charge and mortgage on the land for the amount unpaid, and for general relief.

Plaintiff by his reply admits that he acquired the land subject to the mortgage, given as stated in the answer, and has made payment of interest on the debt as alleged in the answer, and that the mortgage still appears of record as an encumbrance on the land. In effect, the reply admits the existence of the debt of $1800, with interest from March 16, 1922, as alleged in the answer. The reply further asserts that the mortgage is barred by the Act of 1921, referred to in the answer, and by defendants' failure to file the affidavit provided for by that act, and prays the court ''to decree said mortgage null and void and barred by law and order the same cancelled of record, and for all relief prayed for in plaintiff's petition.''

At the trial evidence was introduced without objection tending to prove the allegations of the answer relative to the conveyances and mortgage therein mentioned and payment of interest annually on the $1800-note secured by the mortgage up to and including 1922. The deed from the Kamins to plaintiff was made in 1898 and does not mention the mortgage given in 1891 to Elizabeth Schloman, but plaintiff testified he ''assumed to pay'' that debt. Two letters written by plaintiff to the holder of the note were introduced, in which he spoke of the interest due and that he intended to pay it and the taxes soon. One of these was dated January 21, 1924, and one April 4, 1925.

The court found the issues for defendants and rendered judgment as follows:

''It is therefore considered, adjudged and decreed by the court that the mortgage executed by the said Ferdinand Kamin and Caroline Kamin, his wife, dated March 16, 1891, recorded in Book 9, page 89, of Osage County, Missouri, conveying the aforesaid land, be and the same hereby is ascertained and determined and adjudged, as being still a legal and valid charge and mortgage against the said land, to amount left unpaid on said mortgage, and the note secured by said mortgage;

''That subject to the payment and satisfaction of said mortgage, plaintiff is the owner of the fee-simple title to said land, and fee-simple title to said land, subject to said mortgage, is adjudged to plaintiff accordingly: And it is further ordered that defendant recover of plaintiff their costs herein expended and that execution issue therefor.''

Plaintiff's motion for new trial merely alleges in general terms that the finding and judgment are against the law and evidence and that under the evidence and under the law judgment should have been for plaintiff.

The parties hereto have not challenged the jurisdiction of this court to pass upon the appeal herein, but jurisdiction cannot be conferred by silence or consent of the parties and it becomes our duty to determine from the record whether such jurisdiction exists. [Burns v. Prudential Ins. Co., 295 Mo. 680, 247 S. W. 159, and cases cited.]

It will be seen from the foregoing record that if this court has jurisdiction it must be upon the ground that title to real estate is involved, since the amount in controversy is not sufficient to give us jurisdiction. No constitutional question was presented to or determined by the trial court either before judgment or on the motion for new trial. The pleadings present an issue calling for *construction* of Section 1320, Revised Statutes 1919, as amended by act of the Legislature approved March 31, 1921, Laws 1921, page 203, but do not assail the validity of that act. On the contrary, the pleadings on both sides tacitly concede its validity. The courts of appeals have jurisdiction to construe statutes when construction thereof is necessary in the decision of cases coming within their jurisdiction, and the necessity for such construction does not invest this court with jurisdiction of a case not otherwise within its jurisdiction. [Sublette v. Railroad, 198 Mo. 190, 95 S. W. 430; McManus v. Burrows, 280 Mo. 327, 217 S. W. 512, and cases cited; Bealmer v. Hartford Fire Ins. Co., 281 Mo. 495, 220 S. W. 954; State ex rel. v. Allen, 299 Mo. 25, 240 S. W. 245.] Respondents in their brief in this court suggest that if Section 1320, supra, as amended, be construed as taking away from them the right to foreclose the mortgage under the circumstances, since the note secured by it has been kept alive by payments, the statute thus construed would offend against certain provisions of the Federal and State constitutions. This suggestion seems to be intended as an argument to show that the statute should not be so construed, rather than as an attempt to question the constitutionalty of the act. If intended to present the issue of the constitutionality of the statute so as to give this court jurisdiction, it comes too late, even if it were otherwise sufficient for the purpose. [Bealmer v. Ins. Co., supra; Burns v. Prudential Ins. Co., supra, and cases therein cited.]

We are of the opinion that this case does not involve title to real estate within the meaning of Section 12, Article 6, of the Constitution so as to confer jurisdiction on this court. The petition alone, nothing else appearing from the pleadings, would of course present a case involving title. But defendants' answer and plaintiff's re-

ply define the real issue to be tried. It is admitted in the pleadings that the plaintiff is the owner in fee of the land and that the debt secured by the mortgage is unpaid and is still a valid and enforceable obligation, the plaintiff admitting that he has made payments thereon as alleged in the answer. It is apparent from the pleadings therefore, that the sole issue to be determined is whether or not the mortgage is still an enforceable lien notwithstanding the limitation Act of 1921, supra.

In a recent case, Nettleton Bank v. Estate of McGauhey, 318 Mo. 948, 2 S. W. (2d) 771, this court, en banc, in an opinion written by ELLISON, C., stated the principles determinative of our jurisdiction thus:

"This court has held in many cases that title, to be involved in an action, must be *in issue*. As said in a statement of the rule frequently quoted:

" 'It is not enough that the judgment, when carried into execution, will affect the title to land. The title must be involved in the suit itself, and be a matter about which there is a contest.' [Citing cases.]

"Indeed, the rule goes further. Title must not only be in issue; it must be in issue directly, as distinguished from collaterally or incidentally. The law on this point has been many times declared, as, for example, that:

" 'The constitutional provision vesting appellate jurisdiction in this court in cases involving title to real estate, applies only to cases in which title to land is the subject of the controversy, and in which the judgment will operate directly upon the title, and not to those cases where the title to land may be merely a subject of collateral inquiry, or in which the judgment will only affect the title incidentally or collaterally.' [Citing cases.]

"On this theory the decisions of this court have ruled consistently and uniformly since the adoption of the Constitution in 1875 (and the law is the same elsewhere) that suits to foreclose or enforce mortgages, tax bills, mechanic's liens, and other liens do not involve title to real estate. In all such cases title is necessarily conceded to be in the defendant, and the plaintiff's action, instead of disputing the defendant's title, merely endeavors to subject the land, as the *defendant's* property, to the plaintiff's lien rights. [Citing cases.]

"A like rule applies when a judgment is sought to be enforced by execution against land and the levy is resisted by motion to quash or by injunction. [Citing cases.]

"It follows that to involve title within the meaning of the Constitution a judgment must adjudicate a *title controversy*. The judgment sought or rendered must be such as will directly determine title in some measure or degree adversely to one litigant and in

favor of another; or, as some of the cases say, must take title from one litigant and give it to another."

Many cases are cited in the opinion in support of the propositions laid down.

In Vandeventer v. Bank, 232 Mo. 618, 135 S. W. 23, plaintiff brought an action in the same form and under the same statute as in this case, Section 1970, Revised Statutes 1919. The plaintiff alleged that defendant claimed to own the debt secured by a deed of trust on the land but did not in fact own it and that the debt had been paid, and defendant claimed that it owned the debt and that same was not paid and asked to have its deed of trust adjudged still in force. It was held that the action did not involve title to real estate and that this court was without jurisdiction. The Vandeventer case has frequently been cited with approval.

Corbett v. Brown (Mo. Sup.), 263 S. W. 233, was a case in which the appellant, Brown, had given a note secured by deed of trust, and had afterwards procured possession of the note, claiming to have acquired it lawfully by gift or purchase, and had procured a release of record of the deed of trust. The suit was brought to obtain cancellation of the release and reinstatement of the deed of trust as a lien on the land. This court held that title was not involved and transferred the case to the court of appeals. In the course of the opinion, after reviewing a number of prior decisions, the court says: "By other cases it is settled that a suit to cancel a deed of trust, and put a judicial end to its lien, on the ground that it has been paid, does not belong in this court on appeal."

Puthoff v. Walker (Mo. Sup.), 239 S. W. 108, was such a case. There the suit was brought to cancel a deed of trust and declare the title to the land vested in plaintiff free of the lien on the ground that the debt secured thereby had been merged in a judgment and that the judgment had been paid, thereby discharging the debt. Jurisdiction was held to be in the court of appeals, because the adjudication, while incidentally affecting, would not involve, in a jurisdictional sense, the title to real estate. It has been held that "the rule is now well settled that the Supreme Court has no jurisdiction on this ground [that title is involved] unless the result of the litigation may directly, without subsequent proceeding, affect title to real estate." [Heman v. Wade, 141 Mo. 598, 43 S. W. 162; Weil v. Richardson (Mo. Sup.), 7 S. W. (2d) 348.]

A suit to have a deed of trust declared prior to one of earlier date was held not to involve title in the jurisdictional sense, as the judgment sought would not directly affect the title to real estate. [Clinton County Trust Co. v. Metzger (Mo. Sup.), 266 S. W. 321.]

In Jones v. Hogan, 211 Mo. 45, 109 S. W. 641, plaintiff was trustee in bankruptcy of the estate of one Robert Hogan, defendant being

the wife of Hogan. The petition alleged that the land stood of record in defendant's name, but that it had been paid for by her husband with money concealed by him from his creditors for the purpose of defrauding such creditors, all with defendant's knowledge, and that as to the creditors, whom plaintiff represented, defendant's title was fraudulent and void; and the petition prayed divestiture of title and that the land be adjudged to belong to plaintiff as trustee in bankruptcy. The judgment decreed title in defendant, but subject to a lien in favor of plaintiff for the amount found to have been paid by Robert Hogan on the purchase price in fraud of his creditors, and decreed that the lien be enforced by sale. Defendant alone appealed. This court, speaking through VALLIANT, J., held that title to real estate was not involved; that while the petition attacked defendant's title and asked that it be taken from her and vested in plaintiff, the decree left the title vested in defendant just as the court found it and only imposed a lien thereon in favor of plaintiff; that as defendant was not complaining of the decree as respected title, the title dispute was at an end, and the only issue any longer in the case was whether or not plaintiff was entitled to a lien, and that such issue did not give this court jurisdiction.

Another case apposite in principle is Weil v. Richardson, supra. That was a suit to enjoin the sale of real estate under an execution. One McIlrath had obtained judgment against Mendelsohn-Strauss Realty Co., to enforce which he had certain real estate levied upon as the property of the realty company and advertised for sale. Weil and Strauss sued to enjoin the sale, claiming title to the real estate levied upon in themselves and also that the judgment on which the execution was issued was void. The answer joined issue on both contentions. The court sustained the petition for a permanent injunction on the ground that the judgment was void and that no execution could lawfully issue thereunder, but made no finding concerning the validity of the conveyances purporting to pass the title from the realty company, judgment debtor, to the plaintiffs. This court, in declining to take jurisdiction, held that in view of the judgment rendered, Weil and Strauss not having appealed, the supposed title issue dropped out of the case. The court further held that even had the trial court enjoined the sale on the ground that the real estate belonged to Weil and Strauss and that the judgment debtor had no interest therein, title to real estate would not have been involved within the meaning of Section 12, Article 6, of the Constitution, citing a number of prior decisions. In the discussion of this branch of the case the court used this language (7 S. W. (2d) l. c. 351) which is pertinent here:

"We have frequently held that suits to subject real estate to the lien of judgments, special tax bills, and the like are not suits involving title to real estate within the meaning of Section 12, Article 6, of the Constitution. This suit is at most nothing more than an action to prevent the lien of the judgment being enforced against the real estate in question. A suit to avoid the lien of a judgment could not possibly involve title to real estate, if a suit to enforce the same lien would not do so."

See also King v. Hayes, 319 Mo. 569, 4 S. W. (2d) 1062, wherein it was held that a suit to establish a lien upon real estate does not directly involve title.

From the above-mentioned cases and the numerous decisions of like effect which they cite and discuss, it is seen that in construing the provisions of Section 12, Article 6, of the Constitution, giving the Supreme Court appellate jurisdiction of cases involving title to real estate, we have steadily adhered to the construction that actions which adjudicate only as to *liens* on real estate and do not *directly* affect the *title* are not actions involving title to real estate within the meaning of that provision. Applying the rule as announced in the adjudicated cases to the case before us, it is obvious that title is not involved. The trial court was not asked to adjudicate regarding the *title,* which is admitted to be in plaintiff, and did not in fact do so. Primarily the pleadings on both sides seek the judgment of the court as to whether or not the mortgage, admittedly valid in its inception, is still a lien, or, to state the issue more accurately, whether it is still an *enforceable* lien, because if the Act of 1921, supra, is held to apply, it being a statute of limitations its effect would be only to bar foreclosure. Statutes of limitations merely, that is, statutes which simply preclude the bringing of an action to enforce rights and do not *confer title* by adverse possession or the like, are generally construed not to operate to discharge debts or *destroy* property rights, but to affect only the remedy. [McMerty v. Morrison, 62 Mo. 140; Cowan v. Mueller, 176 Mo. 192, l. c. 198, 75 S. W. 606; Miller v. Miller, 169 Mo. App. 432, 155 S. W. 76; Loewenstein v. Ins. Co., supra, l. c. 120; 1 Wood on Limitations (4 Ed.) secs. 63a, 63b; 17 R. C. L. p. 666.]

Plaintiff, in the prayer of his reply, does ask that the mortgage be declared null and void and that it be cancelled of record. The query suggests itself, is plaintiff entitled in a court of equity to affirmative relief on the facts admitted in his pleadings? A statute of limitations may be used as a defense but not as the basis for affirmative relief; or, as it has been stated, as a shield but not as a sword. And it has been held that since he who seeks equity must do equity, a mortgagor will not be permitted in a court of equity to maintain

an action to cancel the mortgage on the sole ground that foreclosure thereof has been barred by a statute of limitations while the debt secured thereby remains unpaid. [See Burns v. Hiatt, 149 Cal. 617, 87 Pac. 196, 117 A. S. R. 157; Bank of Alma v. Hamilton, 85 Neb. 441, 133 N. W. 458, 133 A. S. R. 676; House v. Carr, 185 N. Y. 453, 78 N. E. 171, 113 A. S. R. 936; Tracy v. Wheeler (N. Dak.), 107 N. W. 68, 6 L. R. A. (N. S.) 516; Miller v. Miller (Neb.), 131 N. W. 203, 34 L. R. A. (N. S.) 360 and note; Wood on Limitations, supra; 5 R. C. L. 664.] However, since the solution of this question per-tains to the adjudication of the case rather than to determination of the question of jurisdiction, we refrain from discussion or decision thereof.

If then, we treat plaintiff's reply as a plea for cancellation of the mortgage set up in the answer, how stands the case? The prayer for cancellation of the mortgage is still no more than an effort "to put a judicial end to its lien," as said in Corbett v. Brown, supra. True, cancellation is not asked on the ground that the debt has been paid and that the mortgage has therefore ceased to be in fact a lien, as in the cases we have cited. But if a suit for cancellation on the ground of payment of the secured debt and consequent *satisfaction* of the mortgage lien does not involve title it is difficult to see how a prayer for cancellation when the debt is not paid and the *enforcement* of the mortgage only is barred by a statute of limitation could be construed as putting the title in issue. If, as held in Weil v. Rich-ardson, supra, a suit to avoid the lien of a judgment could not in-volve title any more than would a suit to enforce the same lien, neither would a suit to avoid the lien of the mortgage in this case involve title any more than would a suit to enforce the same lien.

The conclusion that we are without jurisdiction is reached also on another ground. The judgment of the trial court does not adju-dicate or determine *title*. The fee-simple title to the land was con-ceded by the pleadings to be in plaintiff and the court's judgment of course leaves it there. But since that was a conceded fact about which the pleadings presented no issue, that part of the judgment cannot be considered as adjudicating or determining the title so as to vest appellate jurisdiction in this court. And of course plaintiff, who alone appealed, was not appealing from that part of the judgment which simply declared what he himself contended and defendants admitted. The only thing really determined and adjudged by the court was that defendants still have a lien. In this respect the situ-ation is analogous in principle to Jones v. Hogan, supra, in which there was a title dispute on the pleadings, but it was held that that issue dropped out of the case because the judgment left the title as the court found it, leaving as the only issue in the case the question

whether or not plaintiff had a lien. See also on this point Weil v. Richardson, supra.

We are of the opinion that this court is without jurisdiction of the case and that it should be transferred to the Kansas City Court of Appeals. It is so ordered. *Davis* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.