### Francisco CORRALES, Rosalinda Caneda, and America's Wholesale Lender, Respondents,

v.

### MURWOOD, INC., Appellant.

### No. ED 89210.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 4, 2007.

P.2006, unless otherwise indicated.

William L. Sauerwein, Issa K. Emeish, Clayton, MO, for Respondents.

Gregory F. Hoffman, Clayton, MO, for Appellant.

### *OPINION*

GLENN A. NORTON, Presiding Judge.

Murwood, Inc. appeals the judgment enjoining it from proceeding with the foreclosure of its deed of trust against 3512 Nebraska in St. Louis ("the Property") based on a petition filed by Francisco Corrales and Rosalinda Caneda ("Owners"), the record owners of the Property, and America's Wholesale Lender ("Lender"), which holds a deed of trust against the Property. We affirm.

### I.  BACKGROUND

Murwood sold the Property to Charles and Norma Williams in June of 1989. In connection with the transaction, the Williamses executed a promissory note to Murwood dated June 23, 1989, as part of the purchase money for the Property. The Williamses secured payment of the note with a deed of trust against the Property. The deed of trust was recorded in the city of St. Louis and was never released.

The note was structured as a five-year, non-assumable balloon loan with a stated maturity date of June 23, 1994. The Williamses did not pay the balance of the principal and interest due by the maturity date. However, Murwood did not foreclose due to the Williamses' failure to pay the balance at that time.

On April 27, 1995, the Williamses sold the Property by general warranty deed to Walter Hilton. The general warranty deed contained language indicating that Hilton assumed and agreed to pay the note and deed of trust between the Williamses and Murwood. Hilton made regular payments on the note to Murwood, which Murwood accepted. Hilton made his last payment in July 1998.

On August 4, 1998, Hilton quit-claimed the Property to his cousin Herman Bailey. Although Bailey took the Property subject to the note and deed of trust, Bailey did not assume either and did not agree to make any payments. However, Bailey made regular payments until June 2006.

When Murwood stopped receiving payments from Bailey, it scheduled a foreclosure sale for September 21, 2006. At the time Murwood scheduled the sale, Owners were the record owners based on a series of transfers that ultimately resulted in the conveyance to them. Owners and Lender filed a suit to enjoin the foreclosure and to cancel Murwood's deed of trust. They argued that enforcement of the deed of trust was barred by the statute of limitations contained in sections 516.110 RSMo 2000 [1] and 516.150 because more than ten years had elapsed since the original stated maturity date of the note. The trial court agreed with Owners and Lender and entered judgment permanently enjoining Murwood from enforcing the deed of trust and canceling the deed of trust as a lien against the Property. This appeal follows.

## II. DISCUSSION

### A. Standard of Review

■ When reviewing cases of an equitable nature, we will sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Peet v. Randolph,* 157 S.W.3d 360, 363 (Mo.App. E.D.2005). "Questions of law fall within this [C]ourt's province of independent review and correction." *In re Estate of Parker,* 25 S.W.3d 611, 614 (Mo.App. W.D. 2000) (internal citations omitted).

### B. Tolling of the Statute of Limitations

In its sole point on appeal, Murwood argues that the trial court erroneously found that Hilton's payments did not toll the statute of limitations governing actions on notes for the payment of money or property. It contends that because Hilton assumed and agreed to pay the Williamses' note when he purchased the Property from the Williamses, it received payments from a person legally obligated to pay the debt within ten years of when it scheduled the foreclosure sale.

■ Section 516.110 states that an action upon any writing for the payment of money or property must be commenced within ten years. Generally, the statute of limitations begins to run when the obligation to pay arises. *Mark Twain Bank, N.A. v. Platzelman,* 740 S.W.2d 388, 390 (Mo.App. E.D.1987). In connection with section 516.110, section 516.150 states that "[n]o suit, action or proceeding under power of sale to foreclose any mortgage or deed of trust, to secure any obligation to pay money or property, shall be had or maintained after such obligation has been barred by the statutes of limitation of this state."

In this case, the Williamses' obligation to pay arose on June 23, 1994, the stated maturity date of the note. Thus, Murwood was required to foreclose by June 23, 2004.

---

1. Unless otherwise indicated, all statutory references are to RSMo 2000.

Sections 516.110 and 516.150. Since Murwood did not schedule its foreclosure sale until September 21, 2006, more than ten years after the stated maturity date, Murwood is barred from foreclosing upon the property.

Nevertheless, as stated above, Murwood contends that the statute was tolled due to the payments Hilton made up until July 1998. While he correctly argues that part payment on a debt tolls the statute of limitations, *Anderson v. Stanley*, 753 S.W.2d 98, 100 (Mo.App. E.D.1988), we find that Hilton's payments did not meet the criteria set forth in Missouri case law that would allow the payments to toll the statute of limitations.

■■■ "Where a note on its face shows that it is barred by the statute of limitations, the burden of proof is on the holder to show that the statute has been tolled by the making of a payment within the statutory period prior to the bringing of the action." *Wallace Cotton Co. v. Estate of Wallace*, 722 S.W.2d 103, 106 (Mo.App. S.D.1986). A payment made by one merely for one's own convenience is not sufficient to stop the running of the statute of limitations. *Coleman v. Trueblood*, 351 Mo. 188, 172 S.W.2d 863, 865 (Mo.1943). Instead, to toll the statute of limitations, *the payment must be made by someone legally bound to pay the debt.* Id.

*Frase v. Lee* illustrates the application of these principles. 152 Mo.App. 562, 134 S.W. 10 (Mo.App.1911). In *Frase*, a lender accepted a promissory note which was due on July 23, 1892, one year from the stated date of the note. Id. at 10. The maker of the note also created a deed of trust to secure the balance of the debt. Id. The maker conveyed the property, subject to the deed of trust, to a man named August Block, who quitclaimed the property back to the maker. Id. After several years and a series of further conveyances,

the lender attempted to commence an action to foreclose the deed of trust on March 30, 1908. Id. On appeal, the court considered whether payments Block made up until July 21, 1898, tolled the statute of limitations. Id.

The court held that the payments did not toll the statute of limitations because Block was not legally bound to pay the debt. Id. at 11. To reach its conclusion, the court accepted the trial court's finding of fact that Block agreed to pay the debt secured by the deed of trust as part of the purchase price. Id. at 10. However, because Block did not agree to pay the debt at the time he purchased the land, the court reasoned that any subsequent agreement made by him with the lender would have to be based upon a new consideration. Id. at 11. Therefore, even though he may have promised to pay the debt, and did pay interest upon it, his payments did not constitute a contractual obligation to pay the principal of the note. Id. Because Block was not bound to pay the debt, "payments made by him were in contemplation of law made by a mere volunteer, and did not stop the running of the statute of limitations." Id.

Murwood argues that *Frase* is distinguishable because in that case there was no evidence that Block assumed the debt of the maker of the note. He contends that here, Hilton agreed in writing to assume the Williamses' liability on the note and deed of trust at the time he purchased the Property. We disagree with Murwood's interpretation of *Frase*. As explained above, the court specifically upheld the trial court's finding that Block agreed to pay the maker's debt. *See id.* at 10. The court's main concern was not whether Block agreed to pay, but in what manner he entered into an agreement to pay. Thus, the mere existence of a written assumption on Hilton's part to pay the

Williamses' debt in this case does not make *Frase* inapplicable. It is still necessary for us to consider whether the means by which Hilton assumed the Williamses' debt was sufficient to create a legal obligation for purposes of tolling the statute of limitations.

Murwood argues that Hilton's payments were sufficient to toll the statute because, when he took the deed which contained a recital stating that he assumed or agreed to pay the Williamses' note, he became primarily liable on the debt. *See Nutz v. Shepherd,* 490 S.W.2d 366, 372 (Mo.App. 1973). According to Murwood, because Hilton was primarily liable, his payments tolled the statute. We disagree.

■ While Hilton may owe some duty to pay the Williamses' debt because of his agreement with the Williamses, *see Hafford v. Smith,* 369 S.W.2d 290, 295 (Mo. App.1963) (stating that a purchaser who accepts and holds land under a deed reciting that he has assumed and agreed to pay an outstanding mortgage subjects himself to personal liability on the mortgage), Murwood incorrectly concludes that this duty is sufficient to convert Hilton's payments into payments by a party "legally bound to pay the debt." *See Coleman,* 172 S.W.2d at 865. *Regan v. Williams* explains the effect of Hilton's status as a principal debtor on the statute of limitations. 185 Mo. 620, 84 S.W. 959 (Mo. banc 1905).

In *Regan,* the maker of a note secured by some real estate sold the real estate to an investment company. Id. at 960. As part of the purchase price of the land, the investment company assumed and agreed to pay the note, which was due on March 21, 1889. Id. The owner and holder of the note brought an action on May 4, 1900, more than eleven years later, to recover the balance of the debt from the original maker. Id. The Court held that the owner's claim against the original maker was barred by the ten-year statute of limitations even though the investment company made payments up until March of 1892. Id. at 961. In doing so, the Court acknowledged that the investment company became a principal debtor and the original maker of the note became a surety when the investment company assumed the maker's debt. Id. at 960. However, it found that in order to toll the statute of limitations, the payment must be made by one originally liable. Id. at 961. Thus, unless the investment company jointly bound itself by virtue of an original agreement, its promise was collateral and did not interrupt the statute as to the original obligor. Id. Reviewing the record, the court stated:

> Whether or not the statute ceased to run in favor of [the original maker] when the payments were made by the subsequent grantees depends, then, on whether he can be considered a joint promisor with them. Undoubtedly he was not. They were not parties to the note when it was made, and only became obligated to pay it by subsequent contracts between themselves and [the original maker]. Their responsibility, far from resting on a promise by them given in conjunction with [the original maker] to the payee ... rests exclusively on the promises they made afterwards to assume the debt. In no sense were they joint obligors with him. Their promises neither coincided with his in point of time, nor were made with the same person, nor based on the same consideration. They were separate and distinct undertakings.

*Id.*

As *Regan* illustrates, the mere assumption of a mortgage by a subsequent grantee is not sufficient to toll the statute for purposes of bringing an action on the note against the original debtor regardless of the subsequent grantee's status as a principal debtor. Thus, given that Hilton was not a joint obligor with the Williamses, his

**614**

payments clearly did not toll the statute of limitations for purposes of any action against them on the balance of the note.

We acknowledge that we must determine whether *any* action on the Williamses' note is viable, not just an action against the Williamses. *See* section 516.150 (barring foreclosure once any obligation to collect is likewise barred by section 516.110). However, as explained below, because any action against Hilton to recover the balance of the Williamses' note would not be an action on the note itself, once the statute of limitations ran for purposes of any claim Murwood had against the Williamses, Murwood also lost its right to foreclose on the Property.

Although Murwood could attempt to proceed directly against Hilton based on Hilton's duty to pay, as a third-party beneficiary of the Williamses' contract with Hilton, Murwood's action would be "on the covenant, not on the note." *Hafford,* 369 S.W.2d at 297–98. In other words, any possible obligation to pay the debt represented by the Williamses' note would not arise from the note itself, but from the contract between the Williamses and Hilton, to which Murwood was not a party. Whether a foreclosure is still permissible under section 516.150 necessarily depends on whether an action on any writing for the payment of money or property has been barred under section 516.110. Because Murwood's action *on the note* was barred, Murwood cannot foreclose on the Property.

### III. CONCLUSION

The judgment is affirmed.

LAWRENCE E. MOONEY and KENNETH M. ROMINES, JJ., concur.